Garland, J.
The plaintiff alleges, that he is the owner of three slaves purchased at a sale made by the marshal of the United States, under an execution in his own favor against the Clinton and Port Hudson Railroad Company, obtained in the Circuit Court of the United States, whom he alleges that Lafayette Saunders, Robert Perry, and David J. FIuker, as commissioners appointed to liquidate the affairs of the Railroad Company, have in their possession, and refuse to deliver to him. Two of the slaves, he avers that he never had in possession. One of them, named William, he had in his possession, but avers that he ran away and returned to the defendants. His title, he alleges, is good and legal, and he prays for a judgment decreeing him to be the owner of the slaves, and also for damages.
The defendants, after a general denial, affirm, that the plaintiff has never acquired any title to the slaves he sues for, and that *235 his possession of the slave William was illegal, forcible and fraudulent. They aver, that at the time of the pretended sale under which the plaintiff claims, the slaves were not in the possession of the marshal; that they were not present when pretended to be sold, and were in fact, in the possession of the Sheriff of East Feliciana, under seizures made under other executions ; that the amount bid by the plaintiff was not sufficient to cover older mortgages ; and that the adjudication was improperly made, as said plaintiff did not assume such previous mortgages. They further declare that, previously to the rendition of the judgment under which the plaintiff claims, by an act of the Legislature and the assent of the company, the slaves had become the property of the State, and that the possession of the company was merely as agents, not as owners, and that the right of possessing and administering upon said slaves is now vested in the respondents, as commissioners of the State ; wherefore, they pray to be confirmed in their possession. The defendants then reconvene, alleging that the plaintiff is in the possession of three slaves, named Lewis, Moses and Peter, who are of great value ; that he obtained possession of said slaves illegally, forcibly and fraudulently, and holds them in bad faith ; that said slaves also belong to the State, and that the defendants as commissioners, are entitled to recover them. They aver, that the wages or hire of the said slaves is equal to $150 per month ; and they ask for a judgment for said slaves, or their value, and for $500 as damages.
The plaintiff gave in evidence a deed from the marshal of the United States, dated the 7th July, 1842, in which it is stated, that the three slaves claimed by the plaintiff, and the three claimed by the defendants of him, were seized and sold under an execution in his, plaintiff’s, favor, against the said Railroad Company, and purchased by him, plaintiff, but not delivered, in consequence of the said slaves being then in the custody of the Sheriff of the parish of East Feliciana, who refused to surrender them. The defendants showed, that the Railroad Company purchased the slaves in controversy ; and they gave in evidence the act of mortgage executed by the company, in June, 1839, for the purpose of securing the State from responsibility for the sum of $500,000, for which its bonds had been loaned to the company, *236 under an act of the Legislature, passed in March, 1839. See acts of 1839, p. 212. The second and fourth sections of the act referred to, provide in case the company shall not regularly pay the interest on the bonds loaned, or the principal when due, that the State shall have the right to foreclose the mortgages assigned and pledged to it, and to cause all the property to be sold, or that it may take such other steps for its indemnity as may be deemed advisable. The Railroad Company, in March, 1841, failed to pay the interest on the aforesaid bonds, and the Legislature then passed an act, which declares “ that, by virtue of the second and fourth sections of the act aforesaid, the said road with all the machinery, fixtures, slaves, and appurtenances thereunto belonging, or in any wise appertaining, be, and they are hereby declared forfeited to the State, reserving to said company the right of redeeming the same, according to the provisions of the said act.” The law then provides, that the company may continue to administer its affairs for and on behalf of the State, as long as it shall retain the ownership and control of the premises. See Acts of 1841, p. 74, sec. 2. Under this law the company continued to conduct its business, until the act of 26th March, 1842, was passed. See Acts of 1842, p. 458. This act directs proceedings to be instituted to have the railroad and all the mortgaged property sold, and to have the charter of the company forfeited, and commissioners appointed to liquidate the affairs of the corporation. By virtue of this last act, the defendants were appointed, and on them the powers necessary to transact the business of the company are conferred. See sec. 2 of the act.
The parol evidence shows, that the slave Lewis is worth $1500 ; that Moses is worth $400, and Peter $750; that Lewis is a blacksmith, and his services worth $50 per month ; and that the services of the other two slaves are worth each $15 per month. A witness testifies, that these three negroes were not at the court-house on the day of sale, but were at Port Hudson, and that the plaintiff and the deputy marshal went there the next day, and got possession of them, under pretext of carrying them to Clinton, instead of which they took them away, and it is not shown where they now are. All the slaves were under seizure by the Sheriff of East Feliciana when the marshal made *237 his sale, and were in his possession. By some unexplained means, the marshal, got the three slaves in possession of the defendants into his hands, but the Sheriff immediately retook them ; and none of the slaves were present when the plaintiff purchased. It is further proved, that after the passage of the act of 1841, the company administered its affairs as the agent of the State. It is admitted, that the three slaves claimed by the plaintiff are in the possession of the defendants, and that the plaintiff took away the three negroes claimed of him.
The court below gave a judgment of nonsuit against the plaintiff, and a similar judgment against the defendants on their demand in reconvention, from which both parties have appealed.
The 4th section of the act of 1839, authorized the State, in the event of a failure on the part of the company to pay the interest on any part of the principal of the bonds loaned, “to take such steps for its indemnity, as may be deemed advisableand when, in 1841, the company was in default, the State immediately took possession of the property, declaring it forfeited, and the corporation acted as its agent in administering it. The revenues from the railroad were ordered to be paid into the treasury, and full dominion has been exercised over the property. The act of the Legislature expressly recognizes the ownership as being vested in the State, and the agency of the corporation. It is then clear that, at the time of the pretended seizure by the marshal, the State had a title to all the property, and was in possession; and that officer had no right to disregard the title, and make a seizure. It is contended, that the State had no right to declare the property of the company forfeited; and the right accruing therefrom is said to be of no validity. This may possibly be true; but it did not authorize the plaintiff to disregard the claim, and proceed with his execution. It is well settled, that a judgment creditor cannot treat a conveyance made by his debtor as null, and seize the property so conveyed, in the hands of a third party. He must sue that party to annul the conveyance, if it be illegal or void. 5 Mart. N. S. 361, 634. 6 Ib. N. S. 139, 325. 2 La. 214. 3 La. 479. There are many other objections raised against the title set up by the plaintiff, which we do not think it necessary to discuss, as the *238 one we have stated is fatal. We are, therefore, of opinion that the Judge did not err in his judgment.
Upon the demand in reconvention, the first objection is, that the defendants cannot,’in their capacity of commissioners, reconvene and set up the claim they have done. The counsel for the plaintiff contends, that the right of action belongs to the State ; and that the defendants cannot assert it in their capacity of commissioners. We think he is mistaken. By the act of 1841, the corporation, by its agents and attorneys, were authorized to do and perform all conservatory acts necessary to preserve the interests of the State. Similar authority is, in our opinion, vested in the defendants. They act for the State, are its agents, and may in that capacity sue-and be sued. The plaintiff sues them as the agents of the State; and it would be somewhat strange if they could be made liable in that capacity, and not have the right of asserting the rights of the State entrusted to their management. We think the defendants are competent to urge the demand in reconvention ; and, having shown that the sale under which the plaintiff claims is illegal, we are of opinion, that the defendants must recover the three slaves claimed by them.
The counsel for the plaintiff further objects, that it is not shown that the slaves claimed by the defendants are in the possession of the plaintiff, and therefore that they cannot recover. The evidence shows, that the plaintiff got possession of the slaves in an illegal and fraudulent manner. He admits that he took them away, and since then no trace of the slaves exists, so far as the record informs us. The plaintiff cannot be permitted to avail himself of his own wrong to protect himself. He got possession of the slaves under a false pretext; he carried them away from the parish, and was the last person seen in the possession of them; and when sued he asserts, that his adversary cannot recover, because direct proof is not administered of the slaves having been in his possession at the time. Upon the testimony before us, the presumption of the slaves being in the plaintiff’s posession is so strong, as in our opinion to throw upon him the burden of proving that he has parted with his possession of them, which he . has not attempted to do.
The evidence is full as to the value of the slaves, and of their *239 services, enabling us to decide all the questions which the case presents.
It is, therefore, ordered and decreed, that the judgment of non-suit against the plaintiff be affirmed; and it is further ordered and decreed, that the judgment of nonsuit rendered against the defendants, on their demand in reconvention, be annulled and reversed ; and proceeding to give such judgment as in our opinion should have been rendered in the court below, we do order and adjudge, that the defendants, Saunders, Fiuker, and Perry, in their capacity of commissioners, as set forth in the petition, do recover, for the use and benefit of the State of Louisiana, against the plaintiff, James Drummond, the slaves Lewis, Moses and Peter ; and it is also decreed, that for the hire of the slave Lewis, the defendants recover of the plaintiff the sum of fifty dollars per month from the 8th day'of July, in the year 1842, until said slave shall be delivered; and also that the said defendants recover of the plaintiff the sum of fifteen dollars per month for the hire of each of the slaves Moses and Peter, from the 8th day of July in the year 1S42, until each of them shall be delivered, the plaintiff being a possessor in bad faith. And it is further ordered and decreed that, if the said James Drummond shall not deliver the aforesaid slaves to the defendants, and pay the hire decreed as above, within ninety days after the recording of this judgment in the inferior court, then the said defendants shall have judgment against said James Drummond for the sum of fifteen hundred dollars, the value of the slave Lewis, with interest thereon at the rate of five per cent per annum, from the 8th day of July, 1842, until paid ; also for the sum of seven hundred and fifty dollars, the value of the slave Peter, with interest at the same rate from the date aforesaid until paid ; also for the sum of four hundred dollars, the value of the slave Moses, with interest at the aforesaid rate, from the date aforesaid, until paid. The plaintiff to pay the costs in both courts.